UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>HURIE E. BODYE,<br><br>Defendant. | Criminal Action No. 11-110-7 (JDB) |

## MEMORANDUM OPINION & ORDER

Defendant Hurie Bodye has moved to dismiss the two-count indictment that charges him with conspiring to possess, and in fact possessing, cocaine on board a U.S.-registered aircraft. Noting that the alleged cocaine possession and transport was on a plane flying between two foreign nations, Bodye raises three arguments for dismissal: that the statute criminalizing this offense does not have extraterritorial reach; that Congress lacks the power to give it extraterritorial reach; and that, if read to apply extraterritorially, its application to Bodye would violate the Due Process Clause. These argument are not insubstantial, but the Court is ultimately unconvinced, and will therefore deny Bodye's motion.

## BACKGROUND

In November 2013 a grand jury returned a Second Superseding Indictment charging Bodye and a number of codefendants with two counts. Count One alleges that from roughly 2009 to 2013 the defendants engaged in a conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine on board an aircraft registered in the United States, in violation of 21 U.S.C. § 959(b) (the substantive offense), § 960 (setting penalties), and § 963 (prohibiting attempt and conspiracy), and 18 U.S.C. § 2 (prohibiting aiding and abetting). Count Two alleges that on or about May 22, 2010, the defendants possessed with intent to distribute five kilograms

1

or more of cocaine on board an aircraft registered in the United States, in violation of 21 U.S.C. § 959(b) and § 960, and 18 U.S.C. § 2.

The Government's core factual allegations—which the Court for now will assume are true—are these: In late 2009 and early 2010, Bodye, a Bahamian national and U.S. legal resident, conspired with others to traffic a substantial amount of cocaine. In early 2010 the conspirators obtained a U.S.-registered plane owned by a U.S. charter-plane business. The aircraft, originally located in Arkansas, was flown to Florida for inspection by members of the conspiracy, and was then flown abroad. In May 2010 Bodye and his coconspirators used the aircraft to transport roughly 1,500 kilograms of cocaine from Venezuela to Honduras. The Government has not alleged that the cocaine was destined for the United States.

Bodye has now moved to dismiss the indictment, arguing that even if the Government can prove its allegations, he cannot be convicted of any of the charges in the indictment. See Def.'s Mot. to Dismiss Counts One and Two [ECF No. 213]; Def.'s Reply [ECF No. 220]. The Government of course disagrees. See Gov't's Resp. [ECF No. 216]. The parties argued their positions before the Court on February 29, 2016.

## DISCUSSION

As noted, Bodye's motion advances three arguments. The first is an argument about statutory interpretation—that the provision under which he is charged should not be read to apply to extraterritorial conduct. The second is an argument about congressional authority—that the Constitution does not give Congress the power to enact this provision with extraterritorial reach. And the third is an argument about due process—that to apply this provision to Bodye on the basis of extraterritorial conduct would violate the Due Process Clause. The Court will examine each contention in turn.

### A. The Statute Reaches Extraterritorial Conduct

Section 959 of title 21 contains three subsections. Subsection (a) prohibits anyone from manufacturing or distributing a controlled substance knowing or intending that it will be unlawfully imported into the United States or coastal waters. 21 U.S.C. § 959(a). Subsection (b), the provision at the heart of this case, concerns possession, manufacture, and distribution aboard airplanes. It provides in full:

> It shall be unlawful for any United States citizen on board any aircraft, or any person on board an aircraft owned by a United States citizen or registered in the United States, to—
>
> (1) manufacture or distribute a controlled substance or listed chemical; or
>
> (2) possess a controlled substance or listed chemical with intent to distribute.

Id. § 959(b). Finally, subsection (c) addresses extraterritoriality (and also venue). As relevant, it states: "This section is intended to reach acts of manufacture or distribution committed outside the territorial jurisdiction of the United States." Id. § 959(c).

Bodye's first argument is that the prohibition on possession with intent to distribute in § 959(b)(2), which underlies Count Two of the indictment, does not apply to conduct occurring outside the United States. That is so, he argues, because subsection (c) provides that § 959 applies to extraterritorial "acts of manufacture or distribution," but does <u>not</u> say § 959 applies to extraterritorial acts of <u>possession</u>. And "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 561 U.S. 247, 265 (2010); <u>see also id.</u> at 255 ("It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." (internal quotation marks omitted)). That possession is to be treated differently is reinforced by the structure

3

of § 959(b), which places manufacture and distribution together in paragraph (1) and possession separately in paragraph (2). Hence, Body concludes, possession on a U.S.-registered plane flying from Venezuela to Honduras is not prohibited by § 959.

Bodye's argument appears persuasive at first. But a closer examination of the statute and its history tells a different story. The first important point is that the various parts of § 959 were not all enacted at the same time. As originally enacted in 1970, § 959 prohibited only the manufacture or distribution of a controlled substance with the intent or knowledge that it would be unlawfully imported into the United States—that is, the conduct now prohibited by subsection (a). Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, § 1009, 84 Stat. 1236, 1289. There was originally no prohibition relating to aircraft. As a result, the extraterritoriality provision, which was the same in 1970 as it is today, had the effect of giving the entire section extraterritorial reach. Then, in 1986, the aircraft prohibitions were added as subsection (b), the original import prohibition was placed (in slightly modified form) in subsection (a), and the extraterritoriality and venue provisions were placed (unchanged) in subsection (c). Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 3161, 100 Stat. 3207, 3207-94 to -95.

This statutory history takes much of the force out of Bodye's argument. If the possession prohibition and the extraterritoriality provision had been enacted simultaneously, it would be hard to avoid Bodye's conclusion that the omission of "possession" from the latter was intentional and hence meaningful. But the possession prohibition was in fact added years after the extraterritoriality provision. It is not clear that the failure to add "possession" to the extraterritoriality provision in 1986 was intentional or meaningful. It is possible the need for a conforming amendment was simply overlooked through inadvertence. After all, the entirety of the original § 959 applied extraterritorially, so one might have casually assumed that a new subsection

would as well.  Or one might have thought the phrase "acts of . . . distribution" in the extraterritoriality provision was already broad enough to encompass possession with intent to distribute, so a conforming amendment of subsection (c) was unnecessary.  Cf. United States v. Fawaz, No. 12-cr-120, slip op. at 3 (S.D.N.Y. June 6, 2013) (concluding that "acts of . . . distribution" in § 959(c) does encompass possession with intent to distribute).  Congress's failure to change the extraterritoriality language in 1986 is just not much of an indication of anything.

One might object: So what?  So what if the failure to change that language does not clearly indicate that § 959(b)(2) lacks extraterritorial reach?  What clearly indicates that § 959(b)(2) does have extraterritorial reach?  The presumption, after all, is that a statute does not.  Morrison, 561 U.S. at 255.  True enough—but that presumption can be overcome by context.  Id. at 265.  And context here provides strong evidence that § 959(b)(2) applies abroad.

The most compelling indication is this: if § 959(b)(2) did not have extraterritorial reach, it would only cover conduct that was already prohibited by 21 U.S.C. § 841.  See Fawaz, slip op. at 4.  Since its enactment in 1970, § 841 has forbidden anyone to "possess with intent to . . . distribute . . . a controlled substance."  Pub. L. No. 91-513, § 401(a)(1), 84 Stat. at 1260 (codified at 21 U.S.C. § 841(a)(1)).  This prohibition obviously applies everywhere within the territorial jurisdiction of the United States, including on board airplanes.  Indeed, numerous convictions sustained under § 841 between 1970 and 1986 involved defendants caught with drugs on airplanes.  See, e.g., United States v. Hewitt, 724 F.2d 117 (11th Cir. 1984) (per curiam); United States v. Flynn, 664 F.2d 1296 (5th Cir. 1982); United States v. Driscoll, 632 F.2d 737 (9th Cir. 1980).  Thus, it would have been pointless for Congress in 1986 to have enacted § 959(b)(2) without extraterritorial application—possession with intent to distribute on aircraft within the United States was clearly already illegal.  At the motions hearing, Bodye's counsel suggested that, even without

5

extraterritorial reach, § 959(b)(2) might cover certain scenarios involving planes in flight that § 841 does not reach, but he did not actually identify any such scenario. Nor can the Court think of one. In any scenario, the conduct either did or didn't occur within the territorial jurisdiction of the United States; there is no netherworld that Bodye's reading of § 959(b)(2) would reach but § 841 would not. Hence, the "canon that statutes should be read to avoid making any provision superfluous, void, or insignificant" strongly supports reading § 959(b)(2) as having extraterritorial reach. Milner v. Dep't of Navy, 562 U.S. 562, 575 (2011) (internal quotation marks omitted); see also Yates v. United States, 135 S. Ct. 1074, 1085 (2015) (resisting a reading of one criminal prohibition that would render another superfluous).[1]

This reading is further supported by the introductory clause of § 959(b), which requires either that the defendant be a U.S. citizen or that the plane be U.S.-owned or -registered. This requirement of a non-territorial nexus with the United States—which applies to § 959(b)(2) just as much as § 959(b)(1)—makes perfect sense if § 959(b)(2) applies extraterritorially. The nexus requirement ensures that, despite the statute's extraterritorial application, it will only reach conduct that has some meaningful connection to the United States. But if § 959(b)(2) were limited to conduct occurring within the United States, the nexus requirement would serve no function other than to carve out a strange exception for foreign defendants on foreign planes. It simply does not make sense to impose this non-territorial nexus requirement unless the prohibition in § 959(b)(2) applies to conduct abroad.

---

[1] While some courts have held that § 841 itself has extraterritorial application, they have limited that application to instances in which a defendant intends to distribute the drugs inside the United States. See, e.g., United States v. Orozco-Prada, 732 F.2d 1076, 1087–88 (2d Cir. 1984); cf. United States v. Lopez-Vanegas, 493 F.3d 1305, 1313 (11th Cir. 2007) ("[W]here, as here, the object of the conspiracy was to possess controlled substances outside the United States with the intent to distribute outside the United States, there is no violation of § 841(a)(1) . . . ."). By contrast, the Court reads § 959(b)(2) to cover possession on U.S.-registered aircraft abroad regardless of where the defendant intends to distribute.

6

Finally, it is worth noting that, as Bodye would concede, every other aspect of § 959 clearly applies abroad. Why would a rational drafter leave § 959(b)(2) out? Why make it "a stranger to the statute—a lone provision of only territorial application in a family of provisions with extraterritorial reach"? Fawaz, slip op. at 4. The Court cannot see any policy reason to give the prohibition on possession with intent to distribute narrower geographic scope than the other prohibitions in § 959. Of course, this alone would be an insufficient reason to reject Bodye's position. But when combined with the statute's history, the problem of redundancy with § 841, and the need to make sense of § 959(b)'s introductory language, it convinces the Court that Bodye's view is not correct. Section 959(b)(2) applies to extraterritorial conduct.[2]

### B. Congress Had Authority To Enact § 959(b)(2) With Extraterritorial Reach

Bodye's second argument is that, even if § 959(b)(2) is intended to apply extraterritorially, Congress lacks the authority to give it that effect. In other words, he contends that none of the enumerated powers that the Constitution assigns Congress includes the power to criminalize possession with intent to distribute on a U.S.-registered aircraft located abroad. Def.'s Mot. at 6, 8; see also United States v. Morrison, 529 U.S. 598, 607 (2000) ("Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution.").[3]

---

[2] In addition to Fawaz, the Fifth Circuit and a district court in Florida have reached the same conclusion. United States v. Lawrence, 727 F.3d 386, 391–94 (5th Cir. 2013); United States v. Malago, 2012 WL 3962901, at *2–4 (S.D. Fla. Sept. 11, 2012). The Court must confess, however, that it does not find the reasoning of either opinion especially persuasive. Particularly baffling is Lawrence's reliance on the 1986 addition to § 959(a) of the phrase "or into waters within a distance of 12 miles of the coast of the United States." See 727 F.3d at 392–93 & n.4. Lawrence suggests that the addition of this "limiting language" to § 959(a) indicates that "§ 959(b) was not meant to be territorially limited." Id. at 393. But the phrase added in 1986 was not "limiting"—it expanded the reach of § 959(a). The Court cannot see how this change to § 959(a) has any bearing on the territorial reach of § 959(b)(2).

[3] The conspiracy alleged in Count One embraces both possession with intent to distribute and distribution of a controlled substance aboard a U.S.-registered aircraft. The Court's analysis focuses on Congress's authority to forbid possession with intent to distribute, but it applies with equal force to Congress's authority to forbid distribution.

The Court faces a threshold difficulty with respect to this second argument—namely, the Government's failure to offer any theory of congressional authority in its response. The Government argues that this prosecution is consistent with due process, Gov't's Resp. at 7–11, but that is a distinct issue. Prosecuting a U.S. citizen for possessing a firearm in a (U.S.) school zone would not offend principles of due process, but that does not mean Congress has the authority to ban such conduct. See United States v. Lopez, 514 U.S. 549 (1995). Here, the Government never identifies the constitutional provision that authorizes the enactment of § 959(b) with extraterritorial reach. And when the Court suggested at the motions hearing that the Foreign Commerce Clause might supply the necessary authority, Bodye's counsel urged that the Government had missed its chance to make such an argument. See also Def.'s Post-Hearing Submission [ECF No. 223] at 3.

But the Court does not think Bodye can win by default here. If the Government had consciously chosen to rely exclusively on one constitutional provision, despite the arguable applicability of others, the Court might hold it to that choice. See, e.g., United States v. Bellaizac-Hurtado, 700 F.3d 1245, 1258 (11th Cir. 2012). But that is not what happened. Instead, it seems the Government simply failed to perceive that Bodye's argument about congressional authority was distinct from his argument about due process—a misperception surely attributable in part to Bodye's confusing commingling of the arguments in his motion. See Def.'s Mot. at 6–8. Under the circumstances, the Court will not treat the Government as having forfeited defense of the statute. There is the fundamental principle, moreover, "that an act of Congress is not to be declared invalid except for reasons so clear and satisfactory as to leave no doubt of its unconstitutionality." El Paso & N.E. Ry. Co. v. Gutierrez, 215 U.S. 87, 96 (1909); see also, e.g., Salazar v. Buono, 559 U.S. 700, 721 (2010) (plurality opinion). Here, that means that, despite the lack of help from the

Government, the Court will examine for itself whether Congress had authority to enact § 959(b) with extraterritorial reach.

The scope of that examination is shaped by the nature of Bodye's challenge. A facial challenge to § 959(b) would clearly fail, since Congress undoubtedly has the power to criminalize much of the conduct that falls within the provision's sweep.[4] See United States v. Salerno, 481 U.S. 739, 745 (1987) (party bringing facial challenge "must establish that no set of circumstances exists under which the Act would be valid"). Bodye must therefore be raising an "as-applied" challenge. Accordingly, it does not matter whether Congress might lack authority to criminalize some instances of conduct that fit within § 959(b)'s terms. See id. It suffices here to ask whether Congress had authority to criminalize Bodye's alleged conduct: possession with intent to distribute on a U.S.-registered aircraft located abroad.[5]

The Foreign Commerce Clause and the Necessary and Proper Clause together gave Congress the requisite authority. Start with the Foreign Commerce Clause, which provides: "The Congress shall have Power . . . To regulate Commerce with foreign Nations . . . ." U.S. Const., Art. I, § 8, cl. 3. This provision gives Congress plenary power to regulate the import and export of commercial articles—including the power to flatly prohibit certain articles from entering or leaving the United States. See, e.g., Buttfield v. Stranahan, 192 U.S. 470, 492 (1904) ("[I]t is not to be doubted that from the beginning Congress has exercised a plenary power in respect to the exclusion of merchandise brought from foreign countries . . . ."); United States v. Marigold, 50 U.S. (9 How.) 560, 566–67 (1850) (similar). Without question, then, Congress may ban the import

---

[4] For example, Congress's power to regulate interstate commerce clearly allows it to prohibit possession with intent to distribute on any aircraft flying from one U.S. state to another. Cf. Gonzales v. Raich, 545 U.S. 1 (2005) (holding that this power even permits the criminal prohibition of intrastate cultivation and use of marijuana).

[5] Although the Court here analyzes Congress's authority to reach all U.S.-registered planes, it bears noting that the Government alleges that in this case the plane was both U.S.-registered and also owned by a U.S. company.

9

and export of controlled substances, which are "commodities for which there is an established, and lucrative, interstate [and international] market." Gonzales v. Raich, 545 U.S. 1, 26 (2005); see also Yee Hem v. United States, 268 U.S. 178, 183 (1925) ("The authority of Congress to prohibit the importation of opium in any form . . . is not open to doubt."). It follows readily that Congress may ban possession with intent to distribute on any aircraft entering or leaving the United States.

It is a step further, of course, to ban possession with intent to distribute on aircraft located entirely abroad, not flying to or from the United States. But at least with respect to U.S.-registered planes, Congress can take that step. It can do so by virtue of its authority "[t]o make all Laws which shall be necessary and proper for carrying into Execution" its enumerated powers. U.S. Const., Art. I, § 8, cl. 18. "[T]he Necessary and Proper Clause makes clear that the Constitution's grants of specific federal legislative authority are accompanied by broad power to enact laws that are 'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise.'" United States v. Comstock, 560 U.S. 126, 133–34 (2010) (quoting McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 413, 418 (1819)). As Chief Justice Marshall famously put the point:

> Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.

McCulloch, 17 U.S. (4 Wheat.) at 421. The question "in determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute" is "whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." Comstock, 560 U.S. at 134.

Prohibiting possession with intent to distribute on U.S.-registered aircraft, even those located abroad, is rationally related to Congress's clear power under the Foreign Commerce Clause to prevent controlled substances from moving into or out of the United States. The logic is simple.

U.S.-registered planes must be owned by persons or entities with a substantial connection to the United States.  See 49 U.S.C. § 44102.  Such planes are therefore particularly likely to fly into and out of the United States.  Keeping drugs off such planes at all times is therefore a rational means of stopping drugs from moving into and out of the United States.  To be sure, the ban will cover some instances in which neither the plane nor the drugs were actually destined for the United States, but this prophylaxis is rational.  Just as prohibiting the possession of burglars' tools will stop some break-ins that would not be prevented by the prohibition on burglary itself, so too prohibiting the possession of controlled substances on all U.S.-registered aircraft, regardless of their location, will stop some instances of import and export that would not be caught by a narrower ban.  "[W]hen it is necessary in order to prevent an evil to make the law embrace more than the precise thing to be prevented [Congress] may do so."  Westfall v. United States, 274 U.S. 256, 259 (1927); cf. Gonzalez, 545 U.S. at 22 ("That the regulation [of marijuana manufacture and possession] ensnares some purely intrastate activity is of no moment.  As we have done many times before, we refuse to excise individual components of that larger scheme.").  Hence, Congress had authority to enact § 959(b)'s prohibition on possession with intent to distribute on all U.S.-registered aircraft, even those outside the territorial jurisdiction of the United States.

### C. Bodye's Prosecution Is Consistent With Due Process

Bodye's final argument is that the Due Process Clause of the Fifth Amendment places an independent limit on the extraterritorial application of federal criminal statutes, and that § 959(b) transgresses that limit if applied extraterritorially.  In fact, it remains an open question in this circuit "whether the Due Process Clause constrains the extraterritorial application of federal criminal laws."  United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015).  But assuming it does, the "ultimate question" is "whether application of the statute to the defendant would be arbitrary or

fundamentally unfair," id. (internal quotation marks and brackets omitted), particularly in light of "the idea that 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed,'" United States v. Ali, 718 F.3d 929, 944 (D.C. Cir. 2013) (quoting Bouie v. City of Columbia, 378 U.S. 347, 351 (1964)).

Like Bodye's previous argument, this must be an as-applied challenge. It is obvious that many applications of § 959(b), even to extraterritorial conduct, would pose no due process concerns, so a facial attack would fail. The question is thus whether the Due Process Clause permits the extraterritorial application of § 959(b) on the facts of this case. Hypothetical cases featuring extreme facts, see, e.g., Def.'s Mem. at 7, are irrelevant. And on the facts of this case (again assuming the truth of the Government's allegations), the prosecution of Bodye under § 959(b) is not "arbitrary or fundamentally unfair."

First and foremost, Bodye was a lawful permanent resident of the United States, and was in fact living in the United States, at the time of the conspiracy. Gov't's Resp. at 9. It is not unfair or arbitrary to demand that individuals who have purposely availed themselves of the protections of U.S. law and legal status in this country must obey its criminal code, including those provisions that apply abroad. It is reasonably foreseeable that, given such an individual's strong connection to the United States, the U.S. Government might seek to punish him for acts of international drug trafficking.

Moreover, even setting Bodye's U.S. residency aside, U.S. prosecution of the conduct alleged here was expressly condoned by international law. The United States, Venezuela, and Honduras are all parties to the United Nations Convention against Illicit Traffic in Narcotic Drugs

and Psychotropic Substances, opened for signature Dec. 20, 1988, 1582 U.N.T.S. 95.[6]  Article 3 of the Convention requires each state party, among other things, to criminalize the "distribution, sale, delivery on any terms whatsoever, brokerage, dispatch, dispatch in transit, transport, importation or exportation of any narcotic drug," including cocaine.  Art. 3, ¶ 1(a)(i), 1582 U.N.T.S. at 170.  And Article 4 requires that each state party "take such measures as may be necessary to establish its jurisdiction over the offences it has established in accordance with article 3, paragraph 1, when . . . [t]he offence is committed on board a vessel flying its flag or an aircraft which is registered under its laws at the time the offence is committed."  Art. 4, ¶ 1(a)(ii), 1582 U.N.T.S. at 174–75 (emphasis added).  Thus, all three of the countries with any reasonable connection to this case agreed long ago that it would be appropriate for the United States to prosecute the conduct alleged here.  The Court does not suppose that aspiring drug-traffickers actually investigate such matters, but Bodye cannot complain that the risk of being haled into U.S. court was unknowable.  See Ali, 718 F.3d at 945 (holding that a treaty sufficed to provide "[w]hatever [notice] due process requires here").  His due process argument therefore fails.

## CONCLUSION & ORDER

For the foregoing reasons, each of Bodye's three arguments for dismissal fails.  Accordingly, it is hereby

**ORDERED** that [213] Bodye's Motion to Dismiss Counts One and Two is **DENIED**.

/s/
JOHN D. BATES
United States District Judge

Dated:  March 21, 2016

---

[6] A full list of parties to the Convention, and of their respective dates of ratification, is available on the United Nations' website:  https://treaties.un.org/pages/ViewDetails.aspx?src=TREATY&mtdsg_no=VI-19&chapter=6&lang=en (last visited Mar. 21, 2016).