**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**HURIE BODYE,**<br><br>Defendant. | **Crim. Action No. 11-110 (JDB)** |

**MEMORANDUM OPINION & ORDER**

Defendant Hurie Bodye moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) in light of the threat posed by the COVID-19 pandemic. See Mot. for Compassionate Release ("Release Mot.") [ECF No. 323] at 1.[1] Mr. Bodye is forty-nine years old and currently incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"), a facility for inmates requiring extensive medical care. See id. at 2; Gov't's Opp'n to Def.'s Mot. for Compassionate Release ("Gov't's Opp'n") [ECF No. 325] at 2, 16. He has served about seventy-seven months of his 126-month sentence and is scheduled for release in January 2023. See Gov't's Opp'n at 2, 12. As a Bahamian national, Mr. Bodye is subject to an immigration detainer and will likely be deported following his release from prison. See Gov't's Opp'n at 34; Plea Agreement [ECF No. 279] at 10 ¶ 28 (noting that Mr. Bodye's removal is "presumptively mandatory" given the drug trafficking conviction to which he pled guilty).

Mr. Bodye now argues that multiple health conditions, including obesity, malignant hypertension, chronic renal failure, and congestive heart failure, place him at an increased risk of severe disease if he were to contract COVID-19, and that risk—coupled with a low likelihood of

---

[1] When citing electronic filings throughout this Opinion, the Court cites the ECF page number, not the page number of the filed document.

1

recidivism and the release of his codefendants—warrants his immediate release. See Release Mot. at 4–6. His proposed release plan involves relocating to Miami-Dade County, Florida to live with his wife and son and does not address his immigration detainer or presumptive deportation. See Compassionate Release Petition for Hurie Bodye ("Release Pet.") [ECF No. 323-3] at 3. The government opposes the motion, arguing that Mr. Bodye has failed to establish that (1) his health issues and the conditions at FMC Lexington qualify as "extraordinary and compelling reasons" for release under § 3582(c), and (2) a sentence reduction is consistent with applicable policy. See Gov't's Opp'n at 10–13. For the reasons explained below, the Court agrees with the government and will deny Mr. Bodye's motion for release.

Under the First Step Act of 2018, a court may, upon motion of the Bureau of Prisons or a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," the court concludes that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); see also USSG § 1B1.13 (setting forth the Commission's policy statement, which requires (among other things) that the defendant's release not pose "a danger to the safety of any other person or to the community"). "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Demirtas, No. 11-cr-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020).

To start, the parties dispute whether Mr. Bodye has exhausted his administrative remedies. See Release Mot. at 3–4; Gov't's Opp'n at 9. However, because the government nonetheless argues that the exhaustion requirement should be waived in this instance, see Gov't's Opp'n at 9,

the Court will turn directly to the merits of Mr. Bodye's motion.[2]

"[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). The Court must therefore look to Mr. Bodye's specific health concerns and to the conditions at FMC Lexington to determine whether "extraordinary and compelling reasons" for release exist. See United States v. Johnson, Crim. Action No. 02-310, 2020 WL 5518360, at *2 (D.D.C. Sept. 12, 2020); see also United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) ("In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility."). Such reasons include, at minimum, those circumstances defined in the U.S. Sentencing Guidelines, such as "suffering from a terminal illness" and "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," USSG § 1B1.13, cmt. n.1.

Mr. Bodye states that he suffers from "obesity," "chronic renal failure," "congestive heart failure" and "uncontrolled malignant hypertension." Release Mot. at 2. These conditions are

---

[2] Section 3582(c)(1)(A) includes an exhaustion requirement, allowing a defendant to file a compassionate release motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There is broad agreement that § 3582(c)(1)(A)'s "exhaustion requirement does not implicate [federal courts'] subject-matter jurisdiction." United States v. Alam, 960 F.3d 831, 833 (6th Cir. 2020); see also United States v. Johnson, Criminal No. 15-cr-125 (KBJ), 2020 WL 3041923, at *3 (D.D.C. May 16, 2020) ("In the District of Columbia, every court that has considered the jurisdictional or non-jurisdictional nature of the [exhaustion] mandate . . . has consistently concluded that section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional."). The Court can thus, without exceeding its authority under Article III, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998), proceed directly to the merits of Mr. Bodye's claim, see United States v. Ayers, Crim. No. 8-364 (JDB), 2020 WL 2838610, at *1 n.1 (D.D.C. June 1, 2020) ("turn[ing] directly to the merits, which present a clear basis for denial [of a motion under § 3582(c)(1)(A)], rather than resolving the antecedent question of exhaustion").

documented in medical records submitted to the Court at the time of sentencing in 2016, see Def.'s Sentencing Mem. [ECF No. 297] at 10 & Ex. 2 [ECF No. 297-3], but Mr. Bodye has not provided any recent records identifying his current diagnoses, the severity of his conditions, the treatment he receives to manage these conditions, or how these conditions "substantially diminish[] [his] ability . . . to provide self-care" within FMC Lexington.  The government likewise has not presented any additional records, but has "confirmed with [his] physician in FMC Lexington, A.H. Thompson, that other than chronic kidney disease, which is currently stable and has improved since 2017 based on lab results, the Defendant appears to be in good condition."  Gov't's Opp'n at 2.

The Centers for Disease Control and Prevention ("CDC") recognizes that people with obesity, chronic kidney disease, and heart failure "are at increased risk" of severe illness from COVID-19 and that hypertension "might" place a person at increased risk.  See People With Certain Medical Conditions, Centers for Disease Control and Prevention (Oct. 6, 2020), https://perma.cc/9C34-ZCSL.  Therefore, even if Mr. Bodye's conditions are currently well-managed, the Court does not discount that the potential for serious illness from COVID-19 might be high given Mr. Bodye's health history.  See United States v. McMillan, Criminal No. 19-0082 (PLF), 2020 WL 4039120, at *3 (D.D.C. July 17, 2020) (acknowledging that "the potential for serious illness may be quite high" from COVID-19 where defendant had a history of respiratory abnormalities, chronic kidney disease, malignant hypertensive heart disease and congestive heart failure even if defendant had not shown he was "currently suffering from [those] conditions").

Nonetheless, Mr. Bodye has not demonstrated that the conditions at FMC Lexington presently create a particular risk of infection.  The Court recognizes that FMC Lexington had a "severe outbreak" of COVID-19 infections this spring, see United States v. Danson, Criminal No.

4

10-0051 (PLF), 2020 WL 3467887, at *3 (D.D.C. June 25, 2020) (noting 228 positive cases at FMC Lexington as of May 27, 2020), and nine inmates have died from virus-related compilations, see Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed Oct. 9, 2020).  The number of positive cases, however, has declined precipitously in recent months, and FMC Lexington now has seven inmates and one staff member with active cases of COVID-19.  See id.  Consequently, because the current level of infections "suggest[s] that the [Bureau of Prisons] has been diligent in its efforts to contain and prevent the spread of the virus within the facility," following the initial outbreak, United States v. Payton, Criminal Action No. 3:18-CR-4-CRS, 2020 WL 5649480, at *3 (W.D. Ky. Sept 22, 2020) (assessing conditions at FMC Lexington as of September 21, 2020, when the facility had six active inmate cases), there is no present indication that a second outbreak will arise at FMC Lexington or that the medical center is unequipped to treat those who do contract the virus.

Moreover, the Court is mindful that granting Mr. Bodye's release would carry substantial health risks of its own.  FMC Lexington specializes in treating inmates with serious health needs, see Gov't's Opp'n at 16, and Mr. Bodye does not contest that he is able to manage his conditions there, despite the ongoing pandemic.  In all likelihood, following Mr. Bodye's release from FMC Lexington, he will be detained by U.S. Immigration and Customs Enforcement and it is not clear under what conditions, or for how long, he might be held.  See United States v. Maka, Cr. No. 03-00084-SOM, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020) (describing defendant's "immigration status" as a "huge consideration" in denying compassionate release because "it is possible that [defendant] might be placed in an immigration facility where COVID-19 is present, or that is less equipped to deal with the pandemic than a BOP facility might be"); see also United States v. Mariano, Case No. 5:14cr7, 2020 WL 5026873, at *3 n.1 (W.D. Va. Aug. 25, 2020)

(same). Even if Mr. Bodye was allowed, pending removal proceedings, to live with his wife and son in Miami-Dade County, as he proposes, see Release Pet. at 3, that county has had the second highest total number of COVID-19 infections of any county nationwide, see CDC, COVID Data Tracker (Oct. 9, 2020), available at https://covid.cdc.gov/covid-data-tracker/#county-map, and has reported 2,839 new infections in the last seven days, see New York Times, Florida Covid Map and Case Count (Oct. 9, 2020), available at https://www.nytimes.com/interactive/2020/us/florida-coronavirus-cases.html; see also United States v. Smith, Case No. 17-CR-20753, 2020 WL 5440331, at *4 (E.D. Mich. Sept. 10, 2020) (noting that releasing defendant from "FMC Lexington would likely put him at even greater risk" because defendant's home county was reporting a high number of COVID-19 cases, including many in the last week, and "the medical staff at FMC Lexington seem well-equipped to meet [defendant's] needs").

Thus, in light of Mr. Bodye's present ability to manage his health problems at FMC Lexington and the current conditions at that facility, the Court does not find that Mr. Bodye has shown "extraordinary and compelling reasons" for release. See Payton, 2020 WL 5649480, at *3 (denying compassionate release, despite existence of six inmate infections at FMC Lexington, where defendant's medical conditions, such as hypertension and congestive heart failure "[might] heighten his risk of suffering complications from COVID-19" but were "being effectively treated with medication and other therapies"); see also United States v. Polnett, Case No. CR11-5080-RJB, 2020 WL 5642793, at *3–4 (W.D. Wash. Sept 22, 2020) (denying release where "Bureau of Prisons is now reasonably successful in managing the COVID-19 infection rate at FMC Lexington" and defendant's "various medical and mental conditions, although serious and ongoing, appear to be reasonably well medically managed within the prison system").

Even if Mr. Bodye had demonstrated "extraordinary and compelling reasons" for his

release, this Court may reduce his term of imprisonment only if it is consistent with applicable sentencing policy and the balance of the factors under § 3553(a) favors release. See Ayers, 2020 WL 2838610, at *2; see also 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13 (requiring that the defendant's release not pose "a danger to the safety of any other person or to the community"). But Mr. Bodye's 126-month sentence remains appropriate and "not greater than necessary" to comply with the purposes of sentencing.

Mr. Bodye pled guilty to conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine on board an aircraft registered in the United States. See Plea Agreement at ¶ 1. The statement of facts attached to Mr. Bodye's plea agreement establishes his leadership role in a four-year, thousand-kilogram international cocaine trafficking conspiracy spanning across the Dominican Republic, Honduras, the Bahamas, the United States, Venezuela, and elsewhere. Statement of Facts [ECF No. 278] at 1–3. The guideline range for his offense, given his lack of criminal history, was 235 to 293 months in prison, see Presentence Investigation Report [ECF No. 289] at ¶ 90; but Mr. Bodye and the government both agreed that a term of 120 to 135 months' imprisonment would be appropriate in his case, see Plea Agreement at ¶ 7. Mr. Bodye ultimately argued to the Court at sentencing that a 120-month sentence was sufficient, in part, because his age and medical conditions reduced his risk of recidivism. Def.'s Sentencing Mem. at 14. In line with the parties' stipulated range, the Court imposed a sentence of 126 months in prison, followed by five years of supervised release. Judgment [ECF No. 301] at 2–3. The Court indicated that Mr. Bodye's physical condition was one reason for the downward variance and assessed that a considerably higher sentence would create unwarranted sentencing disparities with his codefendants, see Statement of Reasons [ECF No. 302] at 3, many of whom had already received lighter sentences than Mr. Bodye due to their lesser roles in the conspiracy and their

7

cooperation with the government, see Gov't's Sentencing Mem. [ECF No. 291] at 11–12; Def.'s Sentencing Mem. at 11–13.

Mr. Bodye suggests that his release is nonetheless warranted because his chance of recidivism remains low, given his age and his lack of criminal history, and because his codefendants received shorter sentences that he did. See Release Mot. at 4–5. But these contentions do not create sufficient reason to revisit the Court's original sentencing determination, which factored in these same considerations just four years ago.

The Court is also not persuaded that Mr. Bodye presents no danger to the community because, as he argues, his drug conviction did not involve allegations of violence. See id. The danger posed to the community by drug offenses has been well-established. See, e.g., United States v. Zaragoza, No. CR-08-0083 PJH, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity."); see also United States v. Soto, Case No. 4:17-CR-198 (2), 2020 WL 5821966, at *5 (E.D. Tex. Sept. 29, 2020) (denying compassionate release to defendant who posed safety concerns given her role in supplying coconspirators with methamphetamine and wiring drug proceeds in an international drug trafficking conspiracy); United States v. Sandoval, Case No. CR14-5105RBL, 2020 WL 3077152, at *6 (W.D. Wash. June 20, 2020) (denying two-year reduction of defendant's ten-year sentence because, despite his serious health conditions, defendant had led a drug trafficking conspiracy prior to his incarceration and still posed a danger to community).

Moreover, when granting a defendant's request to reduce his sentence by multiple years due to the threat of COVID-19, courts have often imposed a period of home detention or other conditions of release as a way to lessen any safety concerns. See, e.g., Johnson, 2020 WL 3041923,

at *13 (reducing defendant's sentence by over two years but maintaining a five-year term of supervised release, including a six-month period of home incarceration); United States v. Mason, Case No. 17-cr-195 (TSC), 2020 WL 4199553, at *1, *3 (D.D.C. July 10, 2020) (reducing fifty-year-old defendant's sentence for a non-violent drug crime by over two years but keeping four-year term of supervised release).  Those options are not available here because Mr. Bodye will likely be detained and ultimately deported to the Bahamas when he leaves FMC Lexington.  As a result, the Court cannot rely on any subsequent home detention or ongoing supervision by probation to mitigate the safety risks.  See United States v. Munoz, Case No. 4:12-CR-295(6), 2020 WL 5775020, at *6 (E.D. Tex. Sept. 25, 2020) (concluding that defendant remained a danger to the community because he had been involved in an international drug-trafficking conspiracy prior to his incarceration and probation would be unable to supervise him following his release and deportation to Colombia).

In sum, the Court cannot conclude that Mr. Bodye has established "extraordinary and compelling reasons" for a sentencing reduction under § 3582(c)(1)(A) or that such reduction is consistent with applicable sentencing policy.  As a result, the Court must deny his motion.

\*     \*     \*

For the foregoing reasons, it is hereby **ORDERED** that [323] Bodye's motion for compassionate release is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: October 9, 2020